88 785
88 895

# Richmond.

## RICHMOND & DANVILLE R. R. Co. v. MOFFETT.

### February 11th, 1892.

1. NEGLIGENT INJURIES—*Essentials to recovery.*—In actions against railroad companies for injuries, it is essential to prove, first, that the plaintiff was injured, and secondly, that the injury resulted from the company's negligence.

2. IDEM—*Case at bar.*—In such an action, plaintiff was a passenger on defendant's train that broke through in crossing a trestle. The sleeper whereon plaintiff was, dipped over the break at an angle of forty-five degrees, but so gently as not even to break or put out the lamps in the cars. Plaintiff was sleeping when the break occurred, and on leaving the car, said he was uninjured and declined medical services. Weeks later, he became sick. The physicians disagreed as to the nature of his ailment, his testifying that it was spinal meningitis, the defendant's that it was malaria. At the trial he was well:

HELD:

No injury to plaintiff or negligence of defendant was established, for which a recovery could be had.

Error to judgment of circuit court of Orange county, rendered October 10th, 1890, in an action of trespass on the case in which Daniel A. Moffett was plaintiff, and the Richmond and Danville Railroad Company was defendant. The verdict and judgment being for the plaintiff, the defendant brought the case here on writ of error and *supersedeas.* Opinion states the case.

*William H. Payne*, for plaintiff in error.

*C. E. Nicol* and *W. W. Moffett*, for defendant in error.

LACY, J., delivered the opinion of the court.

The case is trespass on the case by the defendant in error, Daniel A. Moffett, against the Richmond and Danville Railroad Company for damages for injuries alleged to have been received by the plaintiff while riding as a passenger on the cars of the defendant company, &c. The verdict and judgment were against the defendant for $2,000.

The evidence shows that the trestle on the line of road operated by the defendant company, known as the Fat Nancy trestle, situated in the county of Orange, gave way in the nighttime of July 12, 1888, at 2.15 A. M. of that day, and some of the cars—the baggage, mail and express, smoker, and ladies' car—went down, and drew the engine back upon them, which said engine had passed over in safety, but the three sleepers did not go down; the front sleeper dipped over the break at an angle of about forty-five degrees, and remained stationary. The other sleepers remained on the track undisturbed in any way. The defendant in error was in bed in the front sleeper at the time of the accident, about one-third of the distance down the tilted car from the high end. The jar on this car was very slight. The Fat Nancy was undergoing repairs, and so the train, as the rule is, passed over very slowly, creeping, as as the phrase is, about four miles an hour. Moffett was awakened by the tilting of the car and the stand still, but he was not thrown from his bed, nor was any other person thrown out of bed in that car. One person testified that the jar was so slight that he did not leave his bed until he had dressed himself and put on his collar. The porter on watch was sitting in a chair at the upper end of the tilted car, and he was thrown on his feet, so to speak. Two lamps were burning, one at each end of this car; neither was extinguished and neither broken. Not a particle of glass in the windows nor elsewhere was broken on the car in question. The plaintiff did not dress himself in bed, but brought a part of his clothing with him,

and dressed outside, except pants and shoes; these latter he had left behind, and he got these articles from others. He was sleeping on a soft mattress, and the jar was not sufficient to throw him out. He received no cut, nor bruise, nor wound, no injury of any sort, as he himself said when questioned by the railroad officials; and the question asked him, as was asked of all others, " Are you hurt; and if so, how ?" he said he was unhurt; and so his name does not appear in the list of the injured. The doctor was sent there, but he declined any aid from a doctor; he was not hurt at that time. He went to Orange Courthouse, close by, and wrote to his employers in Baltimore city. He was a drummer, and was on a trip to sell goods in North Carolina for a firm which employed him— Witz, Biedler & Co. He mentioned to them the accident, but did not say that he was hurt, but went on his route, and prosecuted his employment as if nothing unusual had happened to him.

The accident happened on the 12th of July. On the 10th of August following, at his place of destination, Moffett felt badly, and went to see a doctor, and told him to prescribe for him. The doctor found him in a nervous state, and asked him if he had been drinking; but he said he had not been drinking, but had been in a railroad wreck *a few days before.* The doctor did not think his condition serious, and prescribed for him, and he improved; but he was so busy that he did not have time to continue the treatment. He went to Baltimore, sent for a doctor, and he came about the 3d or 4th of September, and he was sick for some weeks, and did not recover until January following.

There is a great deal of discussion between the doctors as to the character of his disease. Moffett's doctors say that he had spinal meningitis, and the learned men of the medical profession called on the part of the railroad company deny this, and state that it was impossible upon the stated facts, and credit him with malarial fever.

About this we are not called upon to make any decision. The question for us to consider is not what disease Moffett had, but whether he was injured by the negligence of the railroad company.

It is conceded that Moffett was not hurt in any degree. When he came out of that car he did not have a scratch nor a cut; not a bruise of any sort whatever. He had received no greater shock than a person could receive in a spring mattress, on which he was lifted about eight feet. As he was two-thirds of the way up the car, he must have been lifted when the upper end went up and the lower end went down, but, whether lifted or lowered, it was done on a downy bed, and so gently as not to break a particle of glass, and not to extinguish a burning lamp, nor break anything in the buffet, and not to injure any other person in the car, and so gently as not to make the impression on him at the time that he was hurt, and to affect him so little that, without clothing, he offered to help down below when people were hurt, for the car on which he was, it must be borne in mind, did not go down, but remained upon the trestle. With this fact clearly established that he was not hurt at the time, so that he, nor any other person could perceive or suspect it, we have one other fact clearly established by the evidence, and that is that he was not injured in any way, nor in any degree, when the trial of his action against the railroad took place in 1890. If he was ever injured, or suffered in any degree, it was all over, and he was in perfect health when the case was tried. But he claims and his doctors insist that he had an incurable disease, caused by the jar he received when he was sick, and yet he was entirely well in 1890. The action is for injuries caused by the negligence of the company in failing to keep its bridges in order.

The first thing to be established is the injury to the plaintiff; for, if there is no injury, there can be no recovery, whatever may have been the negligence of the company. The second point to be established is the negligence of the defend-

ant; for, no matter what the injury, there can be no recovery unless the injury was caused by the negligence of the company. (We have no concern in this case with the question of contributory negligence, as the passenger was asleep in his bed.)

In this case the negligence of the company has been rather presumed than proved, while it is an essential element to be proved in the case before there can be any recovery. The bridge of the company did break down and injure others; and the break did tilt the car on which the plaintiff was injured, if he ever was injured. The company was at the time repairing this bridge, and the train was creeping over; it was taking out unsound timber and replacing it with sound. The bridge had not been built over eight years, and the evidence shows that the usual life of such a wooden structure is eight or ten years. There no timbers in the bridge wholly rotten; only some in places, or on the outside of the large timbers. There was evidence that rotten timber was lying around, but there is no proof that it was in the bridge in this condition, nor that it was there when the accident occurred, but the bridge had been before repaired, and the rejected stuff thrown down and left there on the ground; and it is quite as reasonable to presume that the rotten wood referred to was such as had been before taken out of the bridge and left there. The bridge was being repaired in the usual way, so as not to stop the trains. It is in proof that the train was not recklessly but very cautiously drawn over the bridge—creeping. It is in proof that a great many trains had passed over safely that day, and that one exceedingly heavy train had gone over safely, whereas the one which broke through was a light one. So that the only cause of the disaster which is suggested in the evidence is that from some cause the train was derailed, jumped the track, and then the jarring rendered the accident probable.

In what does the negligence of the company consist in these facts? It is not established, nor do we think that the sickness of Moffett, occurring months after an accident, at which he

was not hurt, and passing off soon after, can be ascribed to the accident in question. (1) He was not injured. (2) The company was not proved to have been guilty of negligence in the premises.

It is argued that the company paid those who were injured, and it is admitted that the company settled all claims when the party appeared to have been really injured, but this cannot be regarded as an admission of negligence. There were, doubtless, reasons which induced the company to consider it best to arrange these matters, but of this we know nothing in this suit, except the florid style of the declaration and the sounding phrases of an indictment sent to a special grand jury in Orange county, to which are appended the names of three distinguished lawyers as attorneys for the commonwealth *pro tem*. The action of the company in compromising or settling claims for real injuries cannot be held a confession of negligence at all, and can have no effect in this suit, in which it is distinctly denied.

There are other questions raised in the case which it is not necessary to consider, as we are of opinion that the defendant in error has established no valid claim against the railroad company, and that the circuit court erred in overruling the motion which was made in the case to set aside the verdict as contrary to the law and the evidence, and the judgment of the said court must be reversed and annulled.

JUDGMENT REVERSED.